```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA


JENNIFER BEUCHAT                 :    Case No. 23-302
26738 Guys Mills Road            :
Meadville, PA 16335              :
                                 :
             Plaintiff,          :    COMPLAINT
                                 :
vs.                              :    FILED ON BEHALF OF:
                                 :    Plaintiff, Jennifer Beuchat
PENNSYLVANIA DEPARTMENT OF       :
CORRECTIONS                      :
1920 Technology Parkway          :
Mechanicsburg, PA 17050          :    COUNSEL OF RECORD FOR
                                 :    PARTY:
             Defendant.          :    Neal A. Sanders, Esquire
                                 :    PA ID # 54618
                                 :    Law Offices of Neal A. Sanders
                                 :    262 South Water Street,
                                 :    Suite 200
                                 :    Kittanning, PA 16201
                                 :    T (724) 919-8884
                                 :    F (724) 919-8903
                                 :
                                 :    JURY TRIAL DEMANDED
```

**COMPLAINT AND JURY DEMAND**

Plaintiff Jennifer Beuchat, complaining of Defendant Pennsylvania Department of Corrections, alleges as follows:

**PARTIES**

1.  Plaintiff, Jennifer Beuchat, is an individual citizen who currently resides at 26738 Guys Mills Road, Meadville, Pennsylvania 16335.

2.  Defendant, Pennsylvania Department of Corrections, is an agency of the Commonwealth of Pennsylvania with a central office located at 1920 Technology Parkway, Mechanicsburg, Pennsylvania 17050. Plaintiff is currently employed at SCI

Mercer, which has an address of 801 Butler Pike, Mercer, Pennsylvania 16137.

**JURISDICTION AND VENUE**

3. This action arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e <u>et seq.</u>, and Pennsylvania Common Law.

4. Jurisdiction over Counts I and II of this action is conferred upon this Court by 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331. Jurisdiction over Count III of this action is conferred by 28 U.S.C. § 1367, in that the claim asserted in Count III are so related to the other claims that it forms part of the same case or controversy.

5. Venue is properly laid in the Western District of Pennsylvania, because all transactions and occurrences which give rise to this action occurred within this District.

**COUNT I**
**Title VII**
**Gender Discrimination - Hostile Environment**

6. The Defendant is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b) Specifically, Defendant is an employer in an industry affecting commerce that employed fifteen (15) or more employees in each of twenty (20) or more weeks in the preceding calendar year.

7. At all times relevant hereto, Plaintiff was a member of a class protected under the provisions of Title VII by reason of her gender, female.

8. In or about October 27, 2017, while Plaintiff was employed at SCI-Muncy, Plaintiff was demoted from CO3 to CO1.

9. As part of the November 16, 2021 settlement of the lawsuit that Plaintiff brought against the Defendant following her demotion, the October 27, 2017 demotion was to be removed from her personnel file. A true and correct copy of the settlement agreement is attached hereto as Exhibit 1.

10. On July 1, 2018, Plaintiff transferred to SCI-Mercer in the position of Corrections Officer 1 (CO1).

11. On December 29, 2019, Plaintiff was promoted to CO2, or sergeant.

12. On May 31, 2021, Plaintiff was promoted to CO3, or lieutenant.

13. On May 15, 2022, Plaintiff was promoted to CO4, or captain.

14. As a CO4 at SCI-Mercer, Plaintiff's immediate supervisor is Major Paul Brocklehurst ("Brocklehurst").

15. At all times relevant hereto, Plaintiff was fully qualified for the CO1 through CO4 positions.

16. Following the time that Plaintiff was promoted to Captain, the lieutenants assigned to work during her shift have been constantly rotated by Brocklehurst. The fact that she does not have subordinate supervisory level employees assigned to her shift on a long term basis interferes with Plaintiff's ability to perform her duties. In fact, Plaintiff was a female Captain who had multiple additional duty assignments including PREA

Investigator and Labor Relations as additional duties where the male Captains had no additional duties assigned to them. Plaintiff performed all her duties to the highest standard. Plaintiff was never equalized by upper Management in the number of LT's that were assigned to Plaintiff. This disparate treatment was intentional in that it drastically changes the Captains's workload and thereby changes the Captains performance levels. The desk was stacked against Plaintiff from the beginning. Females at SCI-Mercer are expected to do less with more. Period.

17. Male Captains have one or more lieutenants assigned to their shift on a long term basis.

18. Following the time that Plaintiff was promoted to Captain, and despite the fact that Plaintiff has always received excellent performance evaluations, Brocklehurst told other staff, including commissioned officers, on numerous occasions that, "[Plaintiff] has lost her shift," meaning that Plaintiff did not have control over, or the respect of, her subordinates. This undermined both Plaintiff's authority with her subordinates and the respect of her peers.

19. Brocklehurst did not make similar statements concerning male captains "losing their shifts."

20. Following the time that Plaintiff was promoted to Captain, Brocklehurst has continuously refused to allow her access to the supervisory files of the lieutenants that work on her shift, which interferes with her ability to perform her duty. Male captains are permitted to access these files.

21. In June 2022, Plaintiff was appointed by the Superintendent to work on labor grievances with Brocklehurst, with the understanding that Plaintiff would take over labor relations completely after a few months.

22. Prior to June 2022, Brocklehurst was solely responsible for labor grievances. Subsequent to June 2022, Brocklehurst made numerous comments indicating that he was not pleased that most of this responsibility had been taken from him and given to Plaintiff.

23. After June 2022, Plaintiff was responsible for approximately ninety percent of labor grievances, though after January 2023 she was permitted to delegate to other captains and refer grievances back to Brocklehurst if they involved a prior issue.

24. In January 6, 2023, Plaintiff conducted a fitness for duty exam for a female correctional officer.

25. Captain Alan Claypoole,, Jr., a male employee, was present during the January 6, 2023 fitness for duty exam even though he had been asked to leave.

26. Shortly after the fitness for duty exam was completed, information that was shared by the corrections officer during the exam was spread throughout the facility, which was a violation of confidentiality.

27. In January 6, 2023, Plaintiff reported the breach of confidentiality to Brocklehurst, along with the fact that Captain Claypoole was the only possible source of this breach.

28. Despite the fact that records unequivocally demonstrated that Captain Claypoole was present during the exam, Brocklehurst and Captain Claypoole both falsely reported that Captain Claypoole had not been present for the fitness for duty exam, with the result that no discipline was issued for a violation of policy that could potentially result in immediate termination.

29. On April 4, 2023, Plaintiff was counseled by Brocklehurst and DSFM Meure.

30. During the April 4, 2023 counseling, DSFM Meure accused Plaintiff of lying concerning an issue with prisoner count on February 16, 2023. However, numerous investigations of the incident had confirmed what Plaintiff had reported on the date in question.

31. During the April 4, 2023 counseling, DSFM Meure accused Plaintiff of failing to call Brocklehurst to report an emergency. In fact, Plaintiff had called Brocklehurst several times. Brockehurst confirmed during the counseling that she had left a voicemail, but that he had not answered or called her back. Brocklehurst had not informed DSFM Meure of this fact prior to the counseling.

32. During the April 4, 2023 counseling, DSFM Meure accused Plaintiff of counseling Sergeant Chamberlain, a male employee, without due process. In fact, Plaintiff had informally counseled Sergeant Chamberlain on several occasions with a union representative present.

33. Plaintiff, Captain Berardi and Lieutenant McCracken had all made requests to Brocklehurst to initiate an investigation into Sergeant Chamberlain due to this employee's numerous and serious infractions.

34. Brocklehurst not only did not initiate an investigation into Chamberlain's infractions but directed Lieutenant McCracken to remove references to Chamberlain in a report concerning a severe infraction and omitted reports of Chamberlain's infractions when reporting up the chain of command.

35. Plaintiff met with Brocklehurst and DSFM Meure on multiple occasions concerning Chamberlain's infractions. Both individuals told her to counsel Chamberlain, but then accused her on April 4, 2023 of misrepresenting that she had been given this directive.

36. Brocklehurst did not disclose the multiple requests for an investigation of Chamberlain's infractions to DSFM Meure prior to the April 4, 2023 counseling.

37. Based on the foregoing, Plaintiff had the April 4, 2023 counseling placed in her record, diminishing her opportunities for promotion, even though she did not engage in any of the infractions of which she was accused. The April 4, 2023 counseling was also used as justification to strip her of her labor grievance duties completely and return them to Brocklehurst, a male employee.

38. In addition to the foregoing, during the time that Plaintiff has been a Captain, Brocklehurst has prevented other male employees on Plaintiff's shift, including CO Bowser, Lieutenant Shorts, and others, from receiving discipline even after he or Human Resources had approved or directed that disciplinary procedures be initiated. This undermined Plaintiff's authority on her shift and interfered with her ability to perform her duties.

39. By reason of the foregoing, Brocklehurst prevented male employees from receiving discipline for well-documented infractions while failing to provide information relevant to Plaintiff's April 4, 2023 counseling to DSFM Meure prior to the counseling.

40. On April 14, 2023, Plaintiff was informed that she was the subject of an EEO investigation for allegedly targeting male employees on her shift. LT. Shorts actually did not perform to standard. LT. McCracken, the Senior on shift, and Captain Berardi support in this assertion. LT. Shorts was to have received either a verbal or written reprimand but Shorts got no such reprimand. Brock was to have put Shorts on a Performance Improvement Plan but Brock just kept stalling so Shorts could get a promotion.

41. The EEO complaint is unfounded. Plaintiff categorically denies that she ever violated the Defendant's EEO policies.

42. During the investigation of the EEO complaint against Plaintiff, the investigators repeated asked the individuals being

interviewed leading questions, including some that attributed statements to Plaintiff that she never made.

43. The April 4, 2023 counseling and the April 14, 2023 EEO complaint substantially interfere with Plaintiff's ability to obtain further promotion with the PA DOC.

44. Plaintiff attempted to report many of the foregoing incidents to the Superintendent and HR, but was told not to skip up her chain of command. In other words, she was told to report the issues she had with Brocklehurst to him. Even after Plaintiff filed an EEOC complaint on April 26, 2023 and provided it to the Defendant, the Defendant has not taken any remedial action.

45. By reason of the foregoing, the Defendant, acting through its servants, agents and employees, knowingly permitted and created a hostile work environment because of Plaintiff's gender. The discrimination was sufficiently severe and pervasive to alter the terms, conditions, and privileges of Plaintiff's employment.

46. The foregoing conduct detrimentally affected Plaintiff as it caused her to suffer humiliation, embarrassment, loss of self esteem, and anxiety and depression.

47. The foregoing conduct would have detrimentally affected a reasonable person of the same protected class in the same position as the Plaintiff.

48. As the direct and proximate result of the Defendant's actions set forth above, the Plaintiff has suffered humiliation,

embarrassment and loss of self-esteem, adverse health effects, and loss of time and money in endeavoring to protect herself from Defendant's unlawful discrimination, including the costs and reasonable attorney's fees of this action.

49. Prior to initiating this action, Plaintiff filed administrative charges alleging gender discrimination and retaliation with the EEOC. The EEOC issued a right to sue letter on August 2, 2023. A true and correct copy of this letter is attached hereto as Exhibit 2.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant and award Plaintiff compensatory damages for humiliation, embarrassment and loss of self esteem, and reasonable costs and attorney's fees.

<u>**COUNT II**</u>
<u>**Title VII**</u>
<u>**Retaliatory Hostile Environment**</u>

50. Plaintiff incorporates by reference all averments and allegations from Paragraphs 6 through 49 as though the same were set forth herein at length and made a part hereof.

51. On March 19, 2019, Plaintiff filed a lawsuit under Title VII in the United States District Court for the Western District of Pennsylvania at Docket No. 1:19-cv-00081-SPB, alleging that she had been discriminated against because of her gender during the time that she was employed at SCI-Muncy.

52. On November 16, 2021, Plaintiff and the Defendant settled the litigation at Docket No, 1:19-cv-00081-SPB.

53. By reason of the foregoing, Plaintiff engaged in activity protected under the provisions of Title VII.

54. From December 29, 2019, the date Plaintiff was promoted to sergeant, forward, Plaintiff was not assigned to work "out of class," meaning that she was not allowed to fill in during the absence of individuals higher than her in the chain of command, while all other employees of her rank were given this opportunity.

55. From November 16, 2021 forward, the Defendant has refused to comply with the terms of Paragraph 4 of the Settlement Agreement, under which the Defendant was to removed the October 27, 2017 demotion from her personnel file. (Exhibit 1, ¶ 4). This failure diminished Plaintiff's ability to obtain further promotion.

56. Following the time that Plaintiff was promoted to Captain, the lieutenants assigned to work during her shift have been constantly rotated by Brocklehurst. The fact that she does not have subordinate supervisory level employees assigned to her shift on a long term basis interferes with Plaintiff's ability to perform her duties.

57. Following the time that Plaintiff was promoted to Captain, and despite the fact that Plaintiff has always received excellent performance evaluations, Brocklehurst told other staff, including commissioned officers, on numerous occasions that,

"[Plaintiff] has lost her shift," meaning that Plaintiff does not have control over, or the respect of, her subordinates. This undermined both Plaintiff's authority with her subordinates and the respect of her peers.

58. Brocklehurst did not make similar statements concerning other captains "losing their shifts," including those captain who were rated lower on their evaluations than Plaintiff.

59. Following the time that Plaintiff was promoted to Captain, Brocklehurst has continuously refused to allow her access to the supervisory files of the lieutenants that work on her shift, which interferes with her ability to perform her duty. Other captains are permitted to access these files.

60. In June 2022, Plaintiff was appointed by the Superintendent to work on labor grievances with Brocklehurst, with the understanding that Plaintiff would take over labor relations completely after a few months.

61. Prior to June 2022, Brocklehurst was solely responsible for labor grievances. Subsequent to June 2022, Brocklehurst made numerous comments indicating that he was not pleased that most of this responsibility had been taken from him and given to Plaintiff.

62. After June 2022, Plaintiff was responsible for approximately ninety percent of labor grievances, though after January 2023 she was permitted to delegate to other captains and refer grievances back to Brocklehurst if they involved a prior issue.

63. In January 6, 2023, Plaintiff conducted a fitness for duty exam for a female correctional officer.

64. Captain Alan Claypoole,, Jr. was present during the January 6, 2023 fitness for duty exam even though he had been asked to leave.

65. Shortly after the fitness for duty exam was completed, information that was shared by the corrections officer during the exam was spread throughout the facility, which was a violation of confidentiality.

66. In January 6, 2023, Plaintiff reported the breach of confidentiality to Brocklehurst, along with the fact that Captain Claypoole was the only possible source of this breach.

67. Despite the fact that records unequivocally demonstrated that Captain Claypoole was present during the exam, Brocklehurst and Captain Claypoole both falsely reported that Captain Claypoole had not been present for the fitness for duty exam, with the result that no discipline was issued for a violation of policy that could potentially result in immediate termination.

68. On April 4, 2023, Plaintiff was counseled by Brocklehurst and DSFM Meure.

69. During the April 4, 2023 counseling, DSFM Meure accused Plaintiff of lying concerning an issue with prisoner count on February 16, 2023. However, numerous investigations of the incident had confirmed what Plaintiff had reported on the date in question.

70. During the April 4, 2023 counseling, DSFM Meure accused Plaintiff of failing to call Brocklehurst to report an emergency. In fact, Plaintiff had called Brocklehurst several times. Brockehurst confirmed during the counseling that she had left a voicemail, but that he had not answered or called her back. Brocklehurst had not informed DSFM Meure of this fact prior to the counseling.

71. During the April 4, 2023 counseling, DSFM Meure accused Plaintiff of counseling Sergeant Chamberlain without due process. In fact, Plaintiff had informally counseled Sergeant Chamberlain on several occasions with a union representative present.

72. Plaintiff, Captain Berardi and Lieutenant McCracken had all made requests to Brocklehurst to initiate an investigation into Sergeant Chamberlain due to this employee's numerous and serious infractions.

73. Brocklehurst not only did not initiate an investigation into Chamberlain's infractions but directed Lieutenant McCracken to remove references to Chamberlain in a report concerning a severe infraction and omitted reports of Chamberlain's infractions when reporting up the chain of command.

74. Plaintiff met with Brocklehurst and DSFM Meure on multiple occasions concerning Chamberlain's infractions. Both individuals told her to counsel Chamberlain, but then accused her on April 4, 2023 of misrepresenting that she had been given this directive.

75. Brocklehurst did not disclose the multiple requests for an investigation of Chamberlain's infractions to DSFM Meure prior to the April 4, 2023 counseling.

76. Based on the foregoing, Plaintiff had the April 4, 2023 counseling placed in her record, diminishing her opportunities for promotion, even though she did not engage in any of the infractions of which she was accused.

77. In addition to the foregoing, during the time that Plaintiff has been a Captain, Brocklehurst has prevented other employees on Plaintiff's shift, including CO Bowser, Lieutenant Shorts, and others, from receiving discipline even after he or Human Resources had approved or directed that disciplinary procedures be initiated. This undermined Plaintiff's authority on her shift and interfered with her ability to perform her duties.

78. By reason of the foregoing, Brocklehurst prevented employees who had not engaged in protected activity from receiving discipline for well-documented infractions while failing to provide information relevant to Plaintiff's April 4, 2023 counseling to DSFM Meure prior to the counseling.

79. On April 14, 2023, Plaintiff was informed that she was the subject of an EEO investigation for allegedly targeting male employees on her shift.

80. The EEO complaint is unfounded. Plaintiff categorically denies that she ever violated the Defendant's EEO policies.

81. During the investigation of the EEO complaint against Plaintiff, the investigators repeated asked the individuals being interviewed leading questions, including some that attributed statements to Plaintiff that she never made.

82. The April 4, 2023 counseling and the April 14, 2023 EEO complaint substantially interfere with Plaintiff's ability to obtain further promotion with the PA DOC.

83. Plaintiff attempted to report many of the foregoing incidents to the Superintendent and HR, but was told not to skip up her chain of command. In other words, she was told to report the issues she had with Brocklehurst to him. Even after Plaintiff filed an EEOC complaint on April 26, 2023 and provided a copy of it to the Defendant, the Defendant has not taken any remedial action.

84. By reason of the foregoing, the Defendant, acting through its servants, agents and employees, knowingly permitted and created a hostile work environment because of Plaintiff's prior protected activity. The discrimination was sufficiently severe and pervasive to alter the terms, conditions, and privileges of Plaintiff's employment.

85. The foregoing conduct detrimentally affected Plaintiff as it caused her to suffer humiliation, embarrassment, loss of self esteem, and anxiety and depression.

86. The foregoing conduct would have detrimentally affected a reasonable person of the same protected class in the same position as the Plaintiff.

87. As the direct and proximate result of the Defendant's actions set forth above, the Plaintiff has suffered humiliation, embarrassment and loss of self-esteem, adverse health effects, and loss of time and money in endeavoring to protect herself from Defendant's unlawful discrimination, including the costs and reasonable attorney's fees of this action.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant and award Plaintiff compensatory damages for humiliation, embarrassment and loss of self esteem, and reasonable costs and attorney's fees.

## COUNT III
### Breach of Contract

88. Plaintiff incorporates by reference all averments and allegations from Paragraphs 6 through 87 as though the same were set forth herein at length and made a part hereof.

89. The parties entered a settlement agreement dated November 16, 2021. (Exhibit 1).

90. Paragraph four of the settlement agreement states, "[t]he Defendants further agree to remove the Plaintiff's October 27, 2017 demotion from Corrections Officer III to Corrections Officer I from her official personnel file." (Exhibit 1, ¶ 4).

91. The Defendant, by and through its counsel at the time the settlement agreement was negotiated, was aware that Plaintiff

17

had insisted on the inclusion of Paragraph 4 of the settlement agreement because of her concern that the presence of the demotion in her personnel file would have a negative impact on future promotions.

92. The Defendant breached Paragraph 4 of the settlement agreement by failing to remove the October 27, 2017 demotion from Plaintiff's personnel file.

93. When Plaintiff learned that the demotion continued to be in her personnel file in 2022, she attempted to address the issue through Brocklehurst, but he refused to take any action to resolve the issue.

94. Plaintiff applied for a vacant CO5 (Major) position at SCI-Dallas in February 2023.

95. Plaintiff was more qualified for the CO5 position than the individual to whom it was awarded.

96. On February 17, 2023, Plaintiff was informed by the Defendant that she didn't meet the minimum qualifications for the CO5 position.

97A. Plaintiff had been interviewed for vacant CO5 positions at SCI-Forest in May 2022/May 2023, demonstrating that she did meet the minimum qualifications for CO5 positions. I was not promoted to Major at Forest. I also attended the Mercer interview. My preference was for Mercer, Forest or Albion with an extreme preference for Mercer.

97B. I was denied the ability to interview at SCI-Dallas and was told I didn't meet the qualifications at Dallas when I had

already been approved to interview for that exact job at other SCI Institutions.

98. In March 2023, Plaintiff was interviewed for a vacant CO5 position at SCI-Camp Hill.

99. Plaintiff was not selected for the CO5 vacancies at SCI-Mercer, SCI-Forest, CBS, or SCI-Camp Hill despite being more qualified than the individuals who were selected. I only attended the interviews at SCI-Forest and SCI-Mercer.

100. The non-selection of Plaintiff for any of foregoing CO5 vacancies was directly caused by the blemish on her record resulting from the Defendant's breach of Paragraph 4 of the settlement agreement.

101. As the direct and proximate result of the Defendant's breach of contract, Plaintiff has suffered actual loss in the amount of the difference between the wages she would have received as a CO5 and the wages she earned as a CO4.

103. The damages set forth in Paragraph 101 are a reasonable and foreseeable consequence of the breach of Paragraph 4 of the settlement agreement and are necessary to make Plaintiff whole.

104. Plaintiff is also entitled to injunctive relief directing the Defendant to comply with Paragraph 4 of the settlement agreement and remove the Plaintiff's October 27, 2017 demotion from Corrections Officer III to Corrections Officer I from her official personnel file.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against the Defendant and award Plaintiff injunctive relief requiring Defendant to comply with the terms of the settlement agreement and compensatory damages in the amount of the difference between the wages she would have received as a CO5 and the wages she earned as a CO4.

Respectfully submitted,

LAW OFFICES OF NEAL A. SANDERS

Dated: October 25, 2023

By: /s/Neal A. Sanders
Neal A. Sanders, Esquire
PA ID No. 54618
Counsel for Plaintiff,
Jennifer Beuchat

Law Offices of Neal A. Sanders
262 South Water Street,
Suite 200
Kittanning, PA 16201

T (724) 919-8884
F (724) 919-8903

JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

By: /s/Neal A. Sanders
Neal A. Sanders, Esquire